UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 11-93-HRW

CAPP MANAGEMENT, LLC,                                                       PLAINTIFF,

v.                     **MEMORANDUM OPINION AND ORDER**

ALTON COAL DEVELOPMENT, LLC,                                DEFENDANT.

This matter is before Alton Coal Development, LLC's Motion to Dismiss for Lack of Jurisdiction [Docket No. 22]. The motion has been fully briefed by the parties [Docket Nos. 38 and 47]. The Court having reviewed the parties' briefs as well as the record, finds that it lacks *in personam* jurisdiction over the Defendant.

I. FACTUAL AND PROCEDURAL BACKGROUND

This civil action arises from a purported contract between Plaintiff CAPP Management ("CAPP") and Defendant Alton Coal Development, LLC ("Alton"). Plaintiff alleges that Defendant failed to perform pursuant to the contract and that it is owed commission under the terms of the contract.

Sometime in 2004, Alton began the process of seeking approval to operate a surface coal mine in Utah. In late 2009, Bruce Addington, a Kentucky resident, contacted a member of the Alton Coal, LLC, Robert C. Nead, Jr., a resident of Florida. Addington explained the reason for contacting Nead, "[I] was interested in trying to get back into some - - into the mining business some way and it was just - - it was sort of a cold call." [Deposition of Bruce Addington, May 15, 2012, Docket. No. 25, p. 10, lines: 20 25]. Addington had previously called Stonie

Barker, one of the other members of Alton and also a Florida resident, and Stonie gave him Nead's telephone number. *Id.*

Following Addington's call to Nead, they exchanged emails and phone calls about the proposed mine and the mining plan. At the time, Addington thought that he "might be able to make a deal to buy into the mine or become a contract miner or do something." [Docket No. 25, p. 14, lines: 15-21]. Ultimately, he began to search for other potential investors, so that he could become the contract miner. *Id.* In his deposition, he stated that Nead did not ask that he solicit for any investors in Alton. [Docket No. 25, p. 21, lines: 18-20].

Addington contacted Shannon Keeran, the sole member of CAPP Management, which provides consulting services for coal companies. Addington came to the conclusion that Keeran "had the wherewithal to maybe make something happen on a purchase of the half-interest in the mine that [Nead] wanted to sell . . . ." [Docket Mo. 25, p. 45, lines 9-11].

Early in 2010, Addington met Keeran at his office in Ashland Kentucky and "talked to him about the project . . ." [Docket No. 25, p. 48, lines: 8-10]. This was the first time Keeran learned about Alton Coal's project in Utah. [ Docket No. 22-4, Plaintiff's Response to Admissions, Request # 1].

After discussing Alton's project with Addington, Keeran embarked upon his own due diligence regarding Alton and the mine, all prior to the time that Keeran spoke to any member of Alton. [Deposition of Shannon Keeran, February 10, 2012, Docket No. 23, p. 85, lines: 9-13; p. 94, line: 9 , p.95 line: 13 and Docket No. 22-4 and Docket No. 22-1, Plaintiff's Response to Request for Admissions, Request # 7].

Addington testified that during this time, he did not mention Keeran or CAPP

2

Management to Nead or anyone else at Alton. [Docket No. 25, p. 48]. Addington first discussed an entity called CAPP Resources (not CAPP Management) with Nead and told Nead that he had been "working with them or he had worked with them on a deal and they were looking for opportunities." *Id.*

On February 5, 2010 that Addington called Nead, who was in Florida, to "introduce" Keeran to Nead. [Docket No. 25, p. 63, lines: 8-11]. During this conversation, Nead advised Addington that if Keeran had any interest in Alton, he should call Nead. [Docket No. 24, p.108, lines: 22-25].

Nead testified that "Mr. Keeran called me. I didn't have his number. And then we talked." [Docket No. 24. p.115, lines: 1416].[1] This initial contact between Alton and Keeran was a phone call from Keeran to Nead, admittedly while Keeran was in Ashland, Kentucky, but Nead was in Naples, Florida. In its Response to Request for Admissions, Plaintiff admitted that at the time Keeran called Nead, he knew that Nead was in Florida. [Docket No. 22-4,Response to Request for Admissions, Request # 14]. Additionally, at the time that Keeran called Nead, Keeran understood that the only current business activity of Alton was a coal mine planned to be operated in Utah. [Docket No. 22-4,Response to request for Admissions, Request # 18].

On February 10, 2010, Keeran met with Nead and James Wayland, the majority owner of Alton and a resident of Florida , to discuss the Utah project. This meeting took place in Las Vegas,

---

[1] At his deposition, Keeran maintained that Nead actually called him first. [Docket No,. 23. p. 82, lines: 17-21]. Discovery, including the production of the phone records of Nead and Keeran, establishes that "the first phone conversation between Shannon Keeran and Robert Nead was a call placed by Mr. Keeran to Mr. Nead." [Docket No. 22-4 Response to Request For Admissions, Request # 10].

3

Nevada. This was the first time Keeran met Nead or Wayland.

Keeran testified that in Las Vegas, Nead and Wayland "asked a lot of questions about me and who were my partners were and, you know, did I really have the wherewithal to do a project like this. It was a feel-you-out type of meeting". [Docket No. 23, p. 98, lines: 17-21]. Wayland that the three had lunch together for about a hour, or an hour and a half at the Four Seasons Hotel and that Keeran introduced himself as President of CAPP Resources. Keeran explained that he had "partners" who may have an interest in Alton's project. [Deposition of James Wayland, May 15, 2012, Docket No. 25, pp.85-86].

In March of 2010, Keeran "introduced" Chuck Ungurean to Alton. Ungurean, one of the owners of the company that owns SH Coal Investment, LLC. Nead, Wayland, Keeran and Ungurean met in Columbus, Ohio in March of 2010 [Docket No. 23. p.130, lines 6-15], again in Naples, Florida between April 3 and April 10 of 2010 [Docket No. 23. p.112:lines 17-23, p.124, lines: 22-24] and again in Salt Lake City, Utah on April 14, 2010[Docket No. 23, p. 168-9].

On March 16, 2010, Nead, in Florida, sent an email to Keeran in Kentucky. It reads, in pertinent part:

> If we can get a deal done with your players we will pay you 5% commission on the deal, once we engage Seaport then we will stay [sic] pay you 4% on your players (as your players have been excluded except for the 1% breakout fee).

[Docket No. 22-1]. The agreement upon which Plaintiff bases this lawsuit emanates from this email.

Between March and May of 2010, Keeran and Nead communicated via telephone. In July 2010, Ungurean, Nead and Wayland met in Lexington, Kentucky, at the offices of Bennett

4

Bayer, counsel for Alton. Although documents were exchanged, no final agreement was reached. Keeran was not present at the meeting. Indeed, he was not aware that the meeting was taking place.

In September, the agreement between SH Coal and the members of Alton was separately executed by the members of SH Coal and the members of Alton and electronically exchanged. None of the members of either company were in Kentucky when the documents were executed.

Plaintiff filed this lawsuit against Alton seeking payment of a commission or fee pursuant to the March 16, 2010 email. In it its Complaint, Plaintiff alleges Breach of Contract (Count I); to Promissory Estoppel (Count II), Unjust Enrichment (Count III) and Quantum Meruit (Count IV). [Docket No. 1-2].

Alton disputes the existence of the contract and asserts other defenses pertaining to the alleged agreement. As the issue before the Court is whether the Court has *in personam* jurisdiction over Alton Coal, the Court will confine its findings to that specific issue, without delving into the merits of Plaintiff's claim.

## II. STANDARD OF REVIEW

Two conditions must be met for a federal court to exercise personal jurisdiction over a defendant: (1) the defendant must fall within the long-arm statute of the state in which the federal court sits and (2) the Due Process Clause of the U.S. Constitution must permit the exercise of such jurisdiction. *Aristech Chemical International Limited v. Acrylic Fabricators Limited*, 138 F.3d 624, 627 (6th Cir. 1998). Personal jurisdiction in Kentucky arises under Kentucky's long-arm statute, KRS § 454.210. This statute provides that a court may exercise personal jurisdiction over a nonresident person (including "any commercial entity," which applies to an

5

LLC) "who acts directly or by agent" as to a claim arising from the person's "transacting any business in this Commonwealth." §454.210 (2)(a)(1).

The due process analysis requires an initial finding that the defendant has significant contacts within the forum state showing a "purposeful availment" of the benefits and privileges of doing business in the forum state. General jurisdiction requires that the defendant's contacts are substantial, continuous, and systematic, such that it is reasonable and just to hold the defendant amenable to suit even if the action does not arise out of these contacts. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). However, for specific jurisdiction, contacts with the forum state need not be as "continuous and systematic", nonetheless they must still satisfy the purposeful availment requirement and they must give rise to the action. *Id.* In addition, in the context of specific jurisdiction, the contacts must be substantial enough that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945).

The Court is mindful that the burden is upon Plaintiff to establish that jurisdiction exists. In this case Plaintiff is only required to make a *prima facie* showing for personal jurisdiction and the Court is to resolve any controverted facts in a light most favorable to Plaintiff. *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1214 (6th Cir. 1989).

### III. ANALYSIS

A.   **Kentucky's Long-Arm Statute does not extend to Alton.**

   I.   **Alton was not "transacting business" in Kentucky.**

6

In order to fall within the purview of Kentucky's Long Arm statute, Alton must have been "transacting business" in Kentucky. The Kentucky Supreme Court recently explained that "transacting business", as contemplated by the statute, requires that there be a "reasonable and direct nexus" between a defendant's business directed toward the state and the [plaintiff's] claim." *Caesar's Riverboat Casino v. Beach*, 336 S.W,3d 51, 59 (Ky. 2011).

Alton did not reach out to CAPP Resources, LLC, Keeran or the Plaintiff. To the contrary, it is undisputed that Keeran found out about Alton from Addington and Keeran was analyzing Alton material before he ever spoke with Nead. Moreover, it was Keeran who asked Alton if he could show the project to other investors. In his deposition he was asked, "did you ask and say to them, look, can I go ahead and try to pass this on to somebody else?" to which he replied: I said, I - - you know, it's a small community. Remember that conversation? I know a lot of guys up here. I can show it to somebody else, if you would like. [Deposition of Shannon Keeran. Docket No. 23, beginning at page 143, line 24 and continuing through line 5 on page 144])

Plaintiff's broadly brushed in favor of jurisdiction argument ignores a crucial distinction - who reached out to whom. As the Court of Appeals of Kentucky explained:

> On the one hand the non-resident seller is actively promoting the sales of its products in the forum state and invoking the benefits and protections of its laws while the nonresident purchaser occupies a passive role and usually enjoys no particular privilege or protection in purchasing products from a resident seller.

*First National Bank of Louisville v. Shore Tire Company*, 651 S.W.2d 472, 473 (Ky. Ct. App. 1982).

7

As Judge Heyburn noted in a similar case,

> that Defendant may have communicated with the Plaintiff through letters, telephone calls, e-mails or facsimiles directed to Kentucky. The only reason the communications in question were directed to Kentucky is because Plaintiff found it convenient to be located there.

*Spectrum Scan, LLC v. AGM California*, 519 F.supp.2f 655, 658 (W.D. Ky. 2007).

Plaintiff does not, indeed, cannot, dispute that Keeran solicited Alton on behalf of CAPP Resources, LLC. Plaintiff is the seller, so to speak. Nor can Plaintiff contradict that the only time that Keeran ever met with anyone from Alton to discuss the Utah project was either in Utah, Nevada, Ohio or Florida, never in Kentucky. It would seem that it was immaterial to Alton where it met or sent emails to discuss the Utah project. Rather, it appears that Alton was willing to communicate with Keeran regardless of locale. *Id.*

Notably, the one and only meeting of Keeran and Nead in Kentucky was with regard to settling the claims which give rise to this lawsuit. However, an attempt to negotiate a settlement does not create personal jurisdiction. *Nationwide Mutual Insurance Company v. Tryg International*, 91 F.3d 790, 796 (6th Cir. 1996).

Plaintiff attempts to ensnare Alton within the Long-Arm statute by arguing that either Addington or Alton's counsel, Bennett Bayer, were acting as its agents in Kentucky and therefore Alton can be deemed as "transacting business" in Kentucky,. The Court is not persuaded.

The notion of Addington as an agent of Alton is undermined by his repeated testimony that the reason he contacted Keeran regarding Alton was to pursue his personal interests, not that of Alton. He wanted to become an investor or the contract miner. He clearly stated that Nead did not ask him to solicit on behalf of Alton.

8

As for Alton's Kentucky counsel, Plaintiff rests its argument upon a single email communication between Keeran and Bayer, with regard to settling Keeran's dispute with Alton. As stated above, settlement talks do not confer *in personam* jurisdiction. Further, there is no binding authority which stands for the proposition that a lawyer, simply by virtue of the attorney-client relationship, is one's agent for the purposes of determining jurisdiction.

**B. Due Process precludes *in personam* jurisdiction over Alton.**

The crux of the Due Process analysis is purposeful availment. It is established: (1) when a defendant conducts business, creates obligations or sets in motion business operations in a state, (2) where that conduct has an impact on that state's commerce and (3) in cases where the defendant "should have reasonably foreseen that the transaction would have consequences in that state." *Tri-State Equipment Rentals, LLC v. Chevalier*, 2007 WL 2571672 at *3 (E.D. Ky. 2007) (*citing Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968)).

Alton never intended to do business in Kentucky, and agreements between Alton and Addington and CAPP Resources were never intended for Alton to do business in Kentucky. Alton's only continuing relationship in Kentucky was that with its outside counsel.

*Capital Dredge & Dock Corp. v. Midwest Dredging Co.* 573 F.2d 377 (6th Cir. 1978) is instructive. The defendant in *Capital Dredge* was sued in Ohio, and removed on diversity grounds. The defendant was incorporated in Minnesota and had its principal place of business in Arkansas. The action arose from a breach of contract for dredging services. In finding that it lacked personal jurisdiction over the defendant, the District Court judge wrote:

> [The] agreement was sought by [plaintiff]. All negotiations were
> conducted outside [Ohio]. The only direct contact between Midwest and

9

> plaintiffs [regarding the claim] was its vice president delivering the final contract to [plaintiff's offices] in Ohio and his receiving the first payment under the contract. Plaintiff was to produce no goods in Ohio, nor was any of its performance under the contract to have any impact on Ohio other than its obligation to pay money under the agreement. These facts are simply insufficient to establish long-arm jurisdiction over defendant.

*Id.* at 380. The Court of Appeals agreed

Even if the March 16, 2010 Nead e-mail can be assumed to be a bone fide contract, *Capital Dredge* holds this insufficient. The alleged agreement required nothing more than the introduction of a potential investor. No continuing obligation thereafter. If an investor is found, there is payment, no further work, no ongoing activity

Furthermore, while phone and email exchanges are "contacts", they are insufficient to establish jurisdiction. *See also, Hinners*, 336 S.W.3d 891 ,901 (Ky. 2011) ("Jurisdiction over a nonresident purchaser is not obtained where nonresident's only contact within the state was negotiation by telephone and mail culminating in a single transaction", citing *Tube Turns Div. of Chemetron v. Patterson Co.*, 562 S.W.2d 99 (Ky.App.1978)).

Plaintiff strenuously argues in favor of jurisdiction, listing, in great detail Keeran's actions within Kentucky. However, Keeran is not the focal point of the *in personam* jurisdiction inquiry. Plaintiff's activities are irrelevant to the question of jurisdiction. *Spectrum Scan*, 519 F.Supp.2d at 658.

## IV. CONCLUSION

Plaintiff failed to make a *prima facie* showing. The allegations within its own Complaint have been contradicted by the Plaintiff in the deposition of Keeran and its admissions. Based upon the record, the Court finds that requirements of neither Kentucky's Long Arm statute nor

Due Process have been met.

Accordingly, **IT IS HEREBY ORDERED** that Alton Coal Development, LLC's Motion to Dismiss for Lack of Jurisdiction [Docket No. 22] be **SUSTAINED** and this matter is dismissed.

This 26th day of March 2013.



Signed By:
Henry R. Wilhoit, Jr
United States District Judge